UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MILTON BANKS, JR.                                         CIVIL ACTION

VERSUS

HIAB USA, INC., ET AL.                          NO.: 15-00263-BAJ-EWD

RULING AND ORDER

Before the Court is a **Motion for Summary Judgment (Doc. 23)** and a

**Motion for Sanctions and Attorneys Fees (Doc. 24)** filed by Deep South

Equipment Company ("Deep South"). In its motions, Deep South alleges that Plaintiff

is unable to produce sufficient evidence to prove its claims against Deep South and

asks that the Court impose sanctions because of Plaintiff's failure to dismiss the

"frivolous factually unsupportable claims" it asserted against Deep South. Oral

argument is not necessary.

I.    BACKGROUND

On or about March 14, 2014, Milton Banks, Jr. ("Plaintiff") was delivering

lumber on his employer's behalf to a residential construction site in Zachary,

Louisiana, when he was seriously injured while operating a Moffett M5500 Truck-

Mounted Lift, Model No. G190258 ("the Lift"). (Doc. 1-2 at p. 1). The accident rendered

Plaintiff a paraplegic. Plaintiff filed this action in the Nineteenth Judicial District

Court for the Parish of East Baton Rouge, State of Louisiana, on March 13, 2015.

(Doc. 1-2). In his Petition, Plaintiff alleges that HIAB USA, Inc., the manufacturer of

the Lift, and Deep South, which Plaintiff identifies as the "seller" of the Lift

(collectively "Defendants"), are responsible for the physical injuries sustained by Plaintiff while he was operating the Lift. (*Id.* at p. 1).

Defendants filed a timely notice of removal with the Court on April 24, 2015, asserting that this Court has subject-matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. (Doc. 1 at p. 2). In their Notice of Removal, Defendants assert that Deep South Equipment Company ("Deep South"), "a domestic corporation organized and existing under the law of the state of Louisiana," has been improperly joined in this matter to defeat diversity jurisdiction and that consequently its presence in this suit should be disregarded. (*Id.* at pp. 4-7).

Deep South thereafter filed a motion for summary judgment and a motion for sanctions on June 24, 2016, arguing that Plaintiff is unable to produce sufficient evidence to prove its claims against Deep South and asking that the Court impose sanctions because of Plaintiff's failure to dismiss the "frivolous factually unsupportable claims" it asserted against Deep South. (*See* Doc. 24-2 at p. 3). On January 18, 2017, before ruling on the pending substantive motions, the Court initiated a *sua sponte* inquiry into this Court's subject-matter jurisdiction and ordered the parties to submit briefs specifically addressing the fraudulent joinder allegations and potential jurisdictional issues flagged by Defendants in their Notice of Removal. (*See* Doc. 39). Pursuant to the Court's Order, Defendants filed a joint brief, in which they reasserted many of the arguments contained in their Notice of Removal and Deep South's motion for summary judgment.

2

Because federal courts are courts of limited jurisdiction, the Court is required to inquire into the potential jurisdictional defect and must first determine whether it has subject-matter jurisdiction over this action before turning to Deep South's motion for summary judgment and motion for sanctions. *See Mclin v. H & H Lure Co.*, 102 F.Supp.2d 341, 343 n. 2 (M.D. La. June 2, 2000) ("Before the Court can rule on the motion…, the Court must first determine if the Court has subject-matter jurisdiction. To determine if the Court has subject-matter jurisdiction, the Court must first determine if there was a fraudulent joinder. If the Court finds there was a fraudulent joinder, it is in effect finding that the plaintiffs have no cause of action against the non-diverse defendant.").

## II.   DISCUSSION

### A.  FRAUDULENT JOINDER

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, No. 95-668, 1995 WL 419901, at *4 (E.D. La. July 13, 1995). Although the Court must remand to state court if at any time before final judgment it appears that it lacks

subject-matter jurisdiction, the Court's jurisdiction is fixed at of the time of removal. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Here, the parties do not dispute that the amount-in-controversy-requirement is met, but they disagree about whether the complete diversity requirement is satisfied. Plaintiff and Deep South both have Louisiana citizenship, which would ordinarily destroy complete diversity. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). And when a non-diverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332. But a defendant may remove by showing that the non-diverse party was joined improperly. *Smallwood v. Ill. Cent. R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003) (*Smallwood I*).

The burden of demonstrating improper joinder is a heavy one, as the doctrine is a narrow exception to the rule of complete diversity. *Id.* A defendant may establish improper joinder by showing either (1) actual fraud in pleading jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse defendant. Defendants do not contend that Plaintiff's inclusion of Deep South in this litigation was the result of actual fraud. As such, the Court will focus its inquiry on Deep South's ability to satisfy the latter showing, the test for which is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no

reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*Smallwood II*). The possibility must be reasonable, not merely theoretical. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

In analyzing whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may "'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'" *Menedez v. Wal-Mart Stores, Inc.*, 364 Fed. App'x. 62, 69 (5th Cir. 2010) (per curiam) (quoting *Smallwood II*, 385 F.3d at 573).

The scope of the inquiry for improper joinder, however, is even broader than that for Rule 12(b)(6) because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim. *Smallwood I*, 352 F.3d at 223 n.8 (citing *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003)). *See also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). In conducting this inquiry, the Court must "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. So, too, must the Court resolve all ambiguities of state law in favor of the non-removing party. *Id.* Further, the Court must take care not to "mov[e] beyond jurisdiction and into a resolution on the merits." *Smallwood II*, 385 F.3d at 574.

5

1.  Arguments of the Parties

Defendants offer several objections to this Court's exercise of subject-matter jurisdiction over Deep South. First, Defendants argue that Plaintiff's Petition lacks factual allegations (1) linking Deep South to the Lift as either a manufacturer or a non-manufacturing seller, (2) asserting that Deep South assembled, repaired or maintained the Lift prior to the accident, or (3) that Deep South knew, or had reason to know, of any alleged manufacturing defects in the Lift prior to the accident. (Doc. 41 at p. 5). Defendants further argue that evidence that has developed since the inception of this lawsuit demonstrates that Plaintiff has no possibility of recovery against Deep South. (*Id.* at p. 6). In support of this contention, Defendants rely on the affidavit of Lenn Scallan, a Service/Branch Member of Deep South, to emphasize the attenuated relationship between Deep South and the subject Lift, that is, to demonstrate that Deep South was not a manufacturer or seller of the Lift. (*Id.* at pp. 6-8). Defendants also invoke the testimony of Mac Stewart, the general manager of Ed Price Lumber—Plaintiff's employer and the owner of the Lift—to corroborate the testimony of Mr. Scallan by establishing Deep South's alleged lack of involvement with the Lift prior to Plaintiff's accident. (*Id.* at p. 7). Specifically, Mr. Stewart testified that he did not recall using Deep South for maintenance "at all that much." (*Id.* at p. 8). Defendants argue that the combination of Mr. Scallan and Mr. Stewart's sworn testimony "proves, among other things, that Deep South did not manufacture the Lift, did not sell the Lift,… never refurbished the Lift, did not make a service call on the Lift for more than three years prior to the accident, did not train Plaintiff, or

anyone else, on how to operate the Lift, and had no knowledge or reason to know of any purported defects in the Lift." (*Id.* at p. 9).

Plaintiff counters that "from a pleading perspective, Plaintiff's allegations encompass negligence against Deep South and would be sufficient to withstand a motion to dismiss." (Doc. 42 at p. 4). In support of this assertion, Plaintiff relies on the following allegations from his Petition:

- Deep South knew or should have known at the time about the design characteristics that caused Plaintiff's injuries. (Doc. 1-2 at ¶ 12).

- Deep South knew or should have known at the time about inadequate warnings on the lift. (Doc. 1-2 at ¶ 18).

- The lift's warnings were inadequate because they failed to warn or guide users with regard to static load conditions and operation of the lift with a dynamic load. (Doc. 1-2 at ¶ 10).

- Deep South failed to implement alternative designs or provide adequate warnings. (Doc. 1-2 at ¶¶ 14 – 15, 18).

- The lift was unreasonably dangerous by its design and its warnings at the time it left Deep South's control. (Doc. 1-2 at ¶ 9).

- Deep South's failure to disclose design defects and inadequate warnings were the proximate cause of Plaintiff's injuries. (Doc. 1-2 at ¶ 24).

Finally, Plaintiff avers that subsequent facts unearthed during discovery have established that Deep South conducted several 68-point inspections of the Lift, thus making a claim for recovery possible under Louisiana law. (Doc. 42 at p. 6).

2. Analysis

As instructed by the U.S. Court of Appeals for the Fifth Circuit, the Court starts its analysis by conducting a Rule 12(b)(6)-type analysis, looking initially at the allegations contained in Plaintiff's Petition to determine whether it states a claim

under Louisiana law against Deep South. *See Menedez*, 364 Fed. App'x. at 69. Plaintiff's Petition specifically alleges that the Louisiana Products Liability Act ("LPLA"), § 9:2800.51 *et seq.*, is applicable to "defendants," apparently including Deep South, which Plaintiff's Petition identifies as the seller of the subject Lift. (Doc. 1-2 at ¶¶ 4, 21). The LPLA, however, does not provide a cause of action against "sellers," but only against product manufacturers. *See* La. Rev. Stat. ¶ 9:2800.52 (explaining that the LPLA "establishes exclusive theories of liability for manufacturers for damages caused by their products.") Accordingly, Plaintiff has no reasonable basis for predicting that he might recover against Deep South under the LPLA. See, e.g., *Tantillo v. Cordis Corp.*, No. 04-2005, 2004 WL 2212113, at *1 (E.D. La. Sept. 30, 2004) (holding that because the LPLA only provides a source of recovery against manufacturers, the plaintiff had no possibility of recovery against a seller under the Act).

Generally, however, Louisiana law provides that a non-manufacturer seller of a product may be held liable for its negligent failure to warn consumers of the dangerous propensities of the product it sells. *Kelly v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993). That is, the seller of a defective product may be liable in tort if he knew or should have known that the product was defective, and he failed to declare it. *Id*. Although Plaintiff's Petition includes several allegations that Deep South "knew or should have known" about various alleged defects in the subject Lift, such allegations amount to legal conclusions and are therefore insufficient to state a valid claim against Deep South. Put differently, Plaintiff's Petition merely provides

8

a recitation of the legal standard applicable to Deep South as a non-manufacturer seller of the lift, but provides no factual support for his allegations. Without the requisite factual support, Plaintiff is unable to overcome accusations of fraudulent joinder. *See, e.g., Addison v. Allstate Ins. Co.*, 58 F.Supp.2d 729 (S.D. Miss. June 3, 1999) (finding that a plaintiff's "mere conclusory allegations which have no basis in fact" were insufficient to overcome fraudulent joinder allegations).

Even assuming Plaintiff's ability to satisfactorily state a claim for recovery against Deep South in his Petition, the Court finds that the evidence available in the record pertaining to the discrete issue of subject-matter jurisdiction does not implicate Deep South as the seller of the subject Lift. What's more, Plaintiff appears to concede that discovery has produced no evidence supporting his allegation that Deep South was the seller of the Lift. (*See* Doc. 42 at p. 2). Accordingly, the Court finds that Plaintiff has no possibility of recovery against Deep South as a non-manufacturer seller of the lift.

Notwithstanding the Court's finding that there no factual basis to support the allegations against Deep South contained in Plaintiff's Petition, Plaintiff asserts that he has a valid negligence claim against Deep South. (Doc. 42 at p. 2). Indeed, the bulk of Plaintiff's brief on the question of fraudulent joinder and subject-matter jurisdiction addresses potential negligence claims against Deep South, which apparently derive from Deep South's inadequate repair and maintenance of the Lift.

As an initial matter, the Court notes that Plaintiff's Petition contains no specific claim against Deep South under general negligence law, nor does it contain

9

factual allegations from which the Court might infer such a claim based on Deep South's alleged obligations to perform service and maintenance repairs on the Lift. In fact, the Court was not apprised of Plaintiff's negligence claim stemming from Deep South's inspections on the Lift until the parties filed their Joint Status Report with the Court. (*See* Doc. 8-1). Specifically, after briefly referring to Deep South's "regular and periodic inspections and maintenance on the lift through its business relationship with [Plaintiff's] employer," the Status Report states that "Plaintiff brings claims of negligence as well as claims under the Louisiana Product Liability Act…" (Doc. 8-1 at pp. 1 – 2). Because the Court cannot identify an identical negligence claim in Plaintiff's Petition, consideration of that claim as a means to divest the Court of subject-matter jurisdiction would be tantamount to authorizing Plaintiff to amend his Petition to add said allegations for the same purpose. The Fifth Circuit has stated that such a procedural act is incompatible with general principles governing removal jurisdiction. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) (finding that "limiting removal jurisdiction to the claims in the state court complaint … permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.").

However, even assuming under the most liberal review of Plaintiff's Petition that he has stated a negligence claim against Deep South— which the Court finds he has not — there is no possibility of recovery against Deep South based on the evidence presented to the Court. First, any allegations of negligence cannot withstand a Rule

12(b)(6) review of the Petition for the reasons stated in relation to Plaintiff's non-manufacturer seller claim, namely, that the Petition is riddled with legal conclusions in place of factual allegations. Further, even after "piercing the pleadings" and reviewing summary judgment-type evidence available in the record, the Court finds that there is no reasonable possibility of recovery against Deep South.

First, the service records submitted by the parties in support of their respective motions demonstrate that Deep South performed six service requests on the subject Lift between 2009 and 2011, the last of those inspections having occurred on February 25, 2011, almost three years before Plaintiff's accident. (Doc. 42-2; Doc. 42-3). Since that time, the Lift has been inspected by at least four other service providers before Plaintiff's accident in 2014. (*See* Doc. 41-4). Other than the evidence linking Deep South to routine and insignificant service repairs performed on the Lift years prior to the accident, Plaintiff has failed to offer evidence to supplement its contentions that Deep South's repairs were (1) in any way related to the load-bearing component of the Lift that was the alleged cause of the accident, or (2) defective or insufficient in any way.

Thus, the Court finds that Plaintiff has no reasonable possibility of recovery against Deep South and was therefore fraudulently joined. In making such a finding, the Court holds that Plaintiff has failed to offer evidence demonstrating that it may recover against Deep South, thus warranting dismissal of his claims against Deep South. Consequently, the Court having conducted a summary judgment-type analysis of Plaintiff's claims, Deep South's motion for summary judgment is **GRANTED**.

Notwithstanding the Court's finding of fraudulent joinder, the Court will not order sanctions in the form of costs and attorney's fees as requested by Deep South. (*See* Doc. 24). Although Plaintiff's allegations against Deep South could not withstand the fraudulent joinder analysis, this case lacks the type of exceptional circumstances or "unreasonable and vexatious" conduct necessary to warrant the imposition of sanctions under either Louisiana Code of Civil Procedure article 863 or 28 U.S.C. § 1927. *See, e.g., Skannal v. Jones, Odom, Davis & Politz, L.L.P.,* 195 So.3d 33 (La. App. 2 Cir. 4/13/16) (holding that sanctions under Louisiana Code of Civil Procedure article 863 should be imposed for exceptional circumstances, that is, when the evidence is clear that there is no justification for the legal right exercised); *F.D.I.C. v. Calhoun,* 34 F.3d 1291 (5th Cir. 1994) ("Punishment under [28 U.S.C. § 1927] is sparingly applied, and except when the entire course of the proceedings were unwarranted and should neither have been commenced nor persisted in, an award under [the statute] may not shift the entire financial burden of an action's defense.") (internal quotations omitted).

### III.   CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 23)** filed by Deep South Equipment Company ("Deep South") is **GRANTED**.

**IT IS FURTHER ORDERED** that the **Motion for Sanctions and Attorneys (sic) Fees (Doc. 24)** filed by Deep South is **DENIED**.

12

**IT IS FURTHER ORDERED** that all claims of Plaintiff Milton Banks against

Deep South are **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this ___24th___ day of March, 2017.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

13